ZIELICA and wife, Respondents, vs. WORZALLA and others, Appellants.

*February 3—April 11, 1916.*

*Vendor and purchaser of land: Construction of contract: Ambiguity: Parol evidence: "Clear:" Breach of contract: Measure of damages: Instructions to jury: Harmless errors: Validity of contract: Sunday: Pleading: Presumption as to delivery: Costs: Taxation: Fees of constables: Service of summons and subpœnas.*

1. Where a contract to convey cut-over land provided that the vendors should "clear" a certain seven acres by the following first day of April, and it appeared that the land had been cleared once and was an old pine slashing grown up to poplars which could easily be plowed under, the word "clear" was so far ambiguous that parol evidence of the circumstances surrounding

the transaction was admissible to show the sense in which the word was used; and such evidence is *held* to sustain a finding by the jury to the effect that the parties intended to require the removal of old stumps and down timber so that the seven acres would be ready for immediate plowing and planting.

2. For a breach of an agreement by the vendors of land to clear a part thereof the purchasers' damages should include the reasonable cost of completing the clearing as the contract required and the reasonable value of the use of the land for one season, if they lost such use as the direct result of the breach; but the "reasonable value of the use" should be understood to mean fair rental value, and an instruction that under certain circumstances the jury might find as damages the full value of the crops which it was reasonably certain could have been produced, was probably erroneous.

3. An error, in such case, in the instruction as to the measure of damages, was not prejudicial, where it appears that the sum found by the jury did not exceed the reasonable cost of clearing the land, together with its reasonable rental value.

4. Where the complaint alleges and the answer admits that the contract in suit was made on a secular day, defendant cannot escape liability on the ground that it was in fact made on Sunday unless he proves beyond a doubt that the execution of the contract, including its delivery, was completed on Sunday.

5. A constable not being, in his official capacity, required or authorized to serve the summons and complaint in an action in the circuit court, he acts in serving them simply as a private person, not as an officer, and is not entitled to official fees therefor.

6. But, under sec. 842, Stats., in serving and returning a circuit court subpœna a constable acts officially and hence is entitled, under sec. 2959, to charge the fees therefor which the sheriff is entitled to charge.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Modified and affirmed.*

Action by the vendees in a contract for the conveyance of 120 acres of cut-over land against the vendors for the breach of one of the clauses of the contract which provided that the vendors should "clear" a certain seven acres of the land and build a house upon the land, of a certain description, both the clearing and house to be completed on or before April 1, 1914. It was alleged in the complaint and admitted in the

answer that the contract was entered into August 2, 1913. The plaintiff lived in Chicago at the time and the defendants were partners engaged in selling real estate, having their principal office at Stevens Point and a branch office five miles east of Mosinee. In response to advertising circulars sent out by defendants the plaintiff came to Mosinee in the evening of Saturday, August 2d, looked over the lands on the following Sunday, and returned to Chicago Sunday night, having on that day signed the contract and made the first payment of $500. The purchase price was $1,850, payable in instalments, and the whole amount was paid prior to November 1, 1914. It is admitted that the dwelling house was not completed until May 20, 1914, but it is claimed that the seven acres of land was fully cleared at the time agreed on. Plaintiff and his wife arrived at Mosinee with their household property May 6th, but claimed that they were unable to move into the house for several days on account of its unfinished condition. The chief contention on the trial was as to whether the seven acres of land was "cleared" within the meaning of that term as used in the contract, and oral evidence was received of the circumstances surrounding the parties as bearing upon the meaning of the word. A special verdict was returned by the jury by which it was found (1) that the parties intended by the contract to bind the defendants to clear the seven-acre tract so that it would be ready for immediate plowing and planting, and (2) did not mean that it should be cleared to the same extent and in the same manner as were the lands of others shown by the defendants to the plaintiff; (3) that the tract was not cleared in the manner nor to the extent agreed; (4) that the plaintiffs suffered $241 damage thereby; (5) that the house was not ready for occupancy when the plaintiffs arrived on May 6th; and (6) that plaintiffs suffered $9 damage thereby. Judgment for the plaintiffs for $250 damages and costs was entered on the verdict, and the defendants appeal.

A. L. Smongeski, for the appellants.

For the respondents there was a brief by *Smith & Leicht,* and oral argument by *Brayton E. Smith.*

The following opinion was filed February 22, 1916:

Winslow, C. J.    We think that the word "clear" in this contract is so far ambiguous in its meaning that parol evidence of the circumstances surrounding the transaction was admissible to show the sense in which it was used.    The land had been "cleared" once.    It was (as described by the defendants' witness Burdick) an old pine slashing grown up to poplars which could be easily plowed under.    Now, did the word mean simply to remove the poplar saplings and brush which had grown up since the first clearing, or did it mean also to remove the old stumps and down timber which remained from the original clearing so that the land could be put under plow?    Let it be conceded that the word "clear" as applied to ordinary wood or timber land has a definite meaning, to wit, "to remove the timber but not the stumps" (*Seavey v. Shurick,* 110 Ind. 494, 11 N. E. 597), it is very evident that it must mean something else when applied to cutover land where the timber has been already removed and there is nothing left but stumps and the usual crop of small poplars and brush.    There is no error, therefore, in receiving testimony as to the circumstances surrounding the transaction which tended to show in what sense the parties used the word, and there was certainly enough testimony of this nature to justify the conclusion of the jury.

The only other serious question raised in the trial was the question of the damages resulting from failure to clear the land.    On this question the trial judge instructed the jury that the damages should include the reasonable cost of completing the clearing so as to bring it within the requirements of the contract, also the reasonable value of the use of the land for one season, providing that the plaintiffs lost such use as the direct result of defendants' breach of the contract. If it is understood that "reasonable value of the use" means fair rental value, there seems no doubt that these instructions

are correct. The court, however, further told the jury in substance that under certain circumstances they might find as the reasonable value of the use the full value of the crops which it was reasonably certain could have been produced on the land. We should be slow to approve this latter instruction; the value of a crop never planted is in a high degree speculative, uncertain, and conjectural. See on this subject *Flick v. Wetherbee,* 20 Wis. 392; *Kelley, M. & Co. v. La Crosse C. Co.* 120 Wis. 84, 97 N. W. 674; 13 Cyc. 56.

We find it unnecessary to decide the question. By the overwhelming preponderance of the evidence it appeared that the reasonable cost of clearing the land, together with its reasonable rental value, had it been cleared as the contract provided, aggregated at least the sum fixed by the jury as the damages for failure to clear the land, hence there was no prejudicial error in the instruction in question even conceding it to have been erroneous.

The objection is now made for the first time that the evidence shows that the contract was made on Sunday and hence should not be enforced because contrary to the policy of our law. A sufficient answer to this objection is that the complaint alleges and the answer admits that the contract was made on a secular day, and this admission has never been withdrawn. While this might not be conclusive if it appeared beyond doubt that the contract was fully completed on Sunday (*Jacobson v. Bentzler,* 127 Wis. 566, 107 N. W. 7), it certainly makes it necessary that the proof of Sunday execution of the contract be so complete as to leave no room for doubt. While the proof here makes it quite certain that the paper was drawn and signed on Sunday, there is no proof as to when it was delivered, and delivery was doubtless essential to make it a complete contract. *Non constat* that it was delivered on Sunday, though signed on that day. The presumption would rather be (in support of the admission in the pleadings) that it was delivered by mail on a secular day and thus became a valid contract. *Gibbs & S. M. Co. v. Brucker,* 111 U. S. 597, 4 Sup. Ct. 572.

Several objections were made to the proposed bill of costs, which were overruled by the clerk. Upon motion to review the clerk's taxation but one item allowed was complained of, namely, an item of $9.80 "sheriff's fees." It appears by the record that the sheriff served no papers in the case; a constable served the summons and complaint on one defendant, a private individual served them on the other two defendants, another constable served a subpœna on four witnesses, and the aggregate fees and mileage for the three services make up the item complained of.

In justification of these charges the plaintiff relies chiefly on sec. 2959, Stats., which provides in substance that where a fee is allowed to one officer for the performance of a service, other officers who are authorized by law to perform the same service shall receive the same fee. The difficulty with regard to the charge for service of the summons and complaint is that a constable is not in his official capacity required or authorized to serve them. The circuit court summons is not a writ or process issued out of court, but simply a notice given to defendant by the plaintiff. *Mezchen v. More,* 54 Wis. 214, 11 N. W. 534. The statute makes special provision that the summons and complaint in a circuit court action may be served by the sheriff "or by any other person not a party to the action" (sec. 2635, Stats.). The duties of a constable as prescribed by sec. 842, Stats., do not in terms include the service of these papers, and we think that the provisions of sec. 2635 must be held exclusive. Hence in serving them the constable acts simply as a private person, not as an officer, and is not entitled to official fees therefor. As to the service of the subpœna the situation is different. There is no statute providing for the service of a circuit court subpœna by the sheriff alone, and the section prescribing the duties of a constable (sec. 842) makes it his duty to serve any "writ, process, order or notice . . . lawfully directed to or required to be executed by him by any court or officer." This is substantially the same provision as sub. (4) of sec.

725, defining the duties of a sheriff, and we think that a constable in serving and returning a circuit court subpœna acts officially and hence is entitled to charge the fees therefor which the sheriff is entitled to charge.

The fees charged for copying and serving the summons and complaint aggregated $5.60 and these were erroneously allowed. The balance of the item complained of, being the amount charged by a constable for fees and mileage in serving the subpœna at the same rate allowed a sheriff, was proper. The judgment must be modified accordingly.

*By the Court.*—Judgment modified by reducing the same as of its date in the sum of $5.60, and as so modified affirmed. No costs allowed except the fees of the clerk of this court to be paid by respondents.

A motion for a rehearing was denied, with $25· costs, on April 11, 1916.